## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| MARIA WILLIAMS | ) | |
| Administrator of the Estate of | ) | |
| THESIS LEON WILLIAMS, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-cv-836-TJC-TEM |
| | ) | |
| CHRISTOPHER J. PROHASKA, #76582 | ) | |
| Individually, and in his official | ) | |
| capacity as an officer with the | ) | |
| Jacksonville Sheriff's Office | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| CHRISTOPHER E. KELSEY, #7548 | ) | |
| Individually, and in his official | ) | |
| capacity as an officer with the | ) | |
| Jacksonville Sheriff's Office | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| ROBERT HALLIDAY, #67604 | ) | |
| Individually, and in his official | ) | |
| capacity as an officer with the | ) | |
| Jacksonville Sheriff's Office | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| J. P. SMITH, # 7585 | ) | |
| Individually, and in his official | ) | |
| capacity as an officer with the | ) | |
| Jacksonville Sheriff's Office | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| JASON S. TRANUMN, #63506 | ) | |
| Individually, and in his official | ) | |
| capacity as an officer with the | ) | |
| Jacksonville Sheriff's Office | ) | |
| | ) | |
|     and | ) | |

VICTOR RIVERA, #64571                                )
Individually, and in his official                         )
capacity as an officer with the                         )
Jacksonville Sheriff's Office                            )
                                                                  )
     and                                                )
                                                                  )
BRUCE McDONALD, #7066                           )
Individually, and in his official                         )
capacity as an officer with the                         )
Jacksonville Sheriff's Office                            )
                                                                  )
     and                                                )
                                                                  )
RUSSELL RHODEN, # 7493                           )
Individually, and in his official                         )
capacity as an officer with the                         )
Jacksonville Sheriff's Office                            )
                                                                  )
                                                                  )
     and                                                )
                                                                  )
CLARENCE WINCKLER, # 7649                   )
Individually, and in his official                         )
capacity as an officer with the                         )
Jacksonville Sheriff's Office                            )
                                                                  )
                                                                  )
     and                                                )
                                                                  )
MICHAEL GIBBENS, #66154                       )
Individually, and in his official                         )
capacity as an officer with the                         )
Jacksonville Sheriff's Office                            )
                                                                  )
                                                                  )
     and                                                )
                                                                  )
DONOVAN TRIMBLE, #5454                      )
Individually, and in his official                         )
capacity as an officer with the                         )
Jacksonville Sheriff's Office                            )
                                                                  )
                                                                  )



| | )  |
|---|---|
| and | ) |
| | ) |
| JAMES WADE, #7627 | ) |
| Individually, and in his official | ) |
| capacity as an officer with the | ) |
| Jacksonville Sheriff's Office | ) |
| | ) |
| | ) |
| and | ) |
| | ) |
| C. D. MAGG, #62445 | ) |
| Individually, and in his official | ) |
| capacity as an officer with the | ) |
| Jacksonville Sheriff's Office | ) |
| | ) |
| | ) |
| | ) |
| and | ) |
| | ) |
| JOHN RUTHERFORD,  In His Official Capacity | ) |
| Sheriff of the City of Jacksonville | ) |
| Jacksonville Sheriff's Office | ) |
| 501 West Bay Street | ) |
| Jacksonville, Florida 32202 | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, MARIA WILLIAMS, duly appointed, qualified and

administrator of the estate of Decedent Thesis Leon Williams, by and through her undersigned

counsel, and brings this AMENDED COMPLAINT for damages arising from the death of Thesis

Leon Williams ("Decedent").  Plaintiff states that the Defendants, jointly and severally, in both

their official and individual capacities, and Sheriff John Rutherford in his official capacity only,

each demonstrated a deliberate indifference by refusing to provide adequate treatment, care and

custody to Decedent and knowingly disregarded the identifiable and known risk that the failure

-3-

to provide such measures would ultimately lead to Decedent's death.  These deliberate actions and omissions subjected Decedent to great physical and mental pain and suffering and loss of life in violation of his rights as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.  In support thereof Plaintiff states as follows:

## PARTIES, JURISDICTION, and VENUE

1.      This is an action for damages pursuant to 42 U.S.C. §§ 1983 and 1985.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2.      Venue is proper as the acts complained of herein occurred in Duval County, Florida.

3.      At all relevant times, Decedent Thesis Leon Williams ("Decedent") was a citizen of Florida, in the custody of the Jacksonville Sheriff's Office ("JSO") and/or confined to the Duval County Pretrial Detention Facility ("PTDF") in Jacksonville, Duval County, Florida. Plaintiff Maria Williams is an adult resident of the State of Florida and citizen of the United States, residing in Duval County Florida.  Plaintiff was duly qualified as administrator of the estate of Decedent.

4.      This action is brought by Decedent's personal representative, Plaintiff Maria Williams, as legal representative of Decedent and on behalf of the decedent's heirs at law.

5.      Defendant, CHRISTOPHER J. PROHASKA, JSO #76582, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

6.      Defendant, CHRISTOPHER E. KELSEY, JSO #7548, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

7.      Defendant, ROBERT HALLIDAY, JSO #67604, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

8.      Defendant, J. P. SMITH, JSO # 7585, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

9.      Defendant, JASON S. TRANUMN, JSO #63506, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

10.     Defendant, VICTOR RIVERA, JSO #64571, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

11.     Defendant, BRUCE McDONALD, JSO #7066, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

12.     Defendant, RUSSELL RHODEN, JSO # 7493, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

13.     Defendant, CLARENCE WINCKLER, JSO # 7649, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

14.     Defendant, MICHAEL GIBBENS, JSO #66154, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

15.     Defendant, DONOVAN TRIMBLE, JSO #5454, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

16.     Defendant, JAMES WADE, JSO #7627, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

17.     Defendant, C. D. MAGG, JSO #62445, was at all times relevant to this case a corrections officer with the Jacksonville Sheriff's Office.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

18.     Defendant, JOHN RUTHERFORD, was at all times relevant to this case a the Sheriff of the City of Jacksonville and is sued in his official capacity.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under the color of law.

## FACTUAL ALLEGATIONS

19.     On July 10, 2009, the Decedent, Thesis Leon Williams, was arrested on misdemeanor charges and booked and incarcerated at the Duval County Pretrial Detention Facility ("PTDF").  The PTDF is operated by the Jacksonville Sheriff's Office.

-6-

20.     Upon his booking, Mr. Williams was identified by PTDF intake personnel as having mental health issues.  Specifically, upon his intake on July 10, 2009, it was known to JSO personnel and PTDF medical staff that Mr. Williams had been diagnosed with schizophrenia, had been hospitalized for psychiatric problems, and was showing evidence of hallucinations. Because of his known mental health problems, Mr. Williams was immediately housed on the mental health wing on the 6th floor of the PTDF after going through intake on July 10, 2009.

21.     On or about July 17, 2009, Mr. Williams was found dead in his cell at the PTDF.

22.     Mr. Williams remained on the mental health wing, 6th Floor West ("6W"), of the PTDF from the time he was moved from intake on July 10, 2009 until his death on July 17, 2009. In the 6W area of the PTDF, each inmate is alone in a cell with no contact with other inmates. Mr. Williams had no contact with any other inmates after his July 10, 2009 transfer into the 6W area until his death.  The only contact that Mr. Williams had with other people was with JSO PTDF corrections officers and PTDF medical staff.

23.      After Mr. Williams' death, an investigation was conducted by the JSO Homicide detectives into his death (the "Investigation").

24.     During the Investigation, JSO Homicide Detective D.M. Sullivan spoke with Dr. Valerie Rao of the District IV Medical Examiner's Office ("MEO") on July 17, 2009.  Dr. Rao told Detective Sullivan that it appeared that Mr. Williams died from peritonitis and that the injury originated from blunt force trauma to the abdomen.  Dr. Rao advised Detective Sullivan that the injury could not have occurred prior to Mr. Williams' incarceration on July 10, 2009. Dr. Rao would later advise JSO Homicide Detectives that she "cannot imagine the victim (Mr. Williams) doing this to himself."  Dr. Rao would also inform the JSO Homicide Detectives

during the Investigation that Mr. Williams would have been in visible pain regardless of his psychotic state prior to his death.

25.     Defendant Prohaska worked the 3:00 p.m. to 11:00 p.m. shift on July 16, 2009 in the 6W area of the PTDF.  Defendant Prohaska stated that during that shift, Mr. Williams had vomited in his cell.  Defendant Prohaska placed Mr. Williams in 4-point restraints (binding his arms and legs) and removed Mr. Williams from his cell.  Mr. Williams cell was cleaned by biohazard clean up trustees and Mr. Williams took a shower.  Defendant Prohaska then put Mr. Williams back in his cell.  Defendant Prohaska did not get any medical treatment for Mr. Williams.

26.     On July 16, 2009, a fellow inmate in the PTDF observed Mr. Williams in obvious physical distress and repeatedly told the Defendants on duty that Mr. Williams needed medical care.  The officers responded that Mr. Williams was "doing it" on purpose.  Another inmate also observed Mr. Williams in physical distress and contacted the Defendants on duty.  Both inmates requested that Mr. Williams receive treatment but were ignored by the Defendants on duty.

27.     Upon information and belief, on July 16, 2009, Mr. Williams was administered an injection by the PTDF staff.

28.     During the Investigation, Defendant Wade admitted that "something wasn't right" with Mr. Williams on July 16, 2009.

29.     On July 15, 2009, Defendant Trimble observed Mr. Williams had vomited and "messed on himself."  On July 16, 2009, Defendant Trimble was told by Mr. Williams that Mr. Williams' stomach was hurting and that Mr. Williams was "showing out" to try to get attention for his stomach hurting.

30.     On July 16, 2009, Mr. Williams informed Defendants on duty as well as other PTDF staff that he did not feel well.

31.     Mr. Williams was psychotic and unable to care for himself during his incarceration prior to his death on July 17, 2009.

32.     Defendants Prohaska, Kelsey, Halliday, Smith, Tranumn, Rivera, McDonald, Rhoden, Winckler, Gibbens, Trimble, Wade, and Magg were responsible for were responsible for Mr. Williams care and supervision in the PTDF at various times during the time period of July 13, 2009 through July 17, 2009.   During this period, the Defendants failed to provide adequate care and treatment of Mr. Williams by failing to respond to signs of apparent and severe pain and discomfort and ignoring requests from Mr. Williams and others to get treatment for Mr. Williams.

33.     Mr. Williams death was caused by peritonitis.  Upon information and belief, Mr. Williams' peritonitis was caused by blunt force trauma to the abdomen and was not self-inflicted.  Upon information and belief, the injury that precipitated the peritonitis occurred on or after July 13, 2009.

34.     From July 10, 2009, through his death, Mr. Williams was incarcerated alone in a cell at PTDF, with no cell mate.  Mr. Williams only contact was with PTDF staff from the time of his incarceration on July 10, 2009.

35.     Mr. Williams was in severe and constant pain and distress prior to his death.

36.     Mr. Williams was not monitored adequately for his health condition during his incarceration that led to his death.   Instead, Mr. Williams was monitored by individual

Defendants and mental health staff at PTDF who were, upon information and belief, not properly trained to identify non-mental health medical issues in inmates such as Mr. Williams.

37.     Mr. Williams was medicated by the PTDF staff on or about July 16, 2009 and at the time of providing such medication, the medical staff was, upon information and belief, not adequately trained to identify the non-mental health medical issues that Mr. Williams was suffering.

38.     The policies and procedures of Defendant Rutherford and the Jacksonville Sheriff's Office fail to adequately care for and respond to necessary medical treatment for inmates with mental health problems.  Specifically, JSO corrections' officers working at the PTDF with inmates with mental health problems are not trained how to adequately recognize, care for, and treat medical emergencies.  JSO corrections' officers are not trained in how to adequately treat and care for inmates with mental health problems.  Defendant Rutherford and the Jacksonville Sheriff's Office's policies and procedures fail to ensure the adequate care and treatment of inmates with mental health issues.  These failures in developing adequate policies and procedures are responsible for the inadequate care and treatment of Mr. Williams.

39.     At all times relevant herein, Defendants were persons acting under the color of State law and deprived Mr. Williams of his federal Constitutional rights.

**COUNT I**
**(DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS**
**IN VIOLATION OF 42 U.S.C. § 1983**) – All Defendants

40.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 39 of the Amended Complaint as if fully set forth herein.

-10-

41.     The actions of John Rutherford, Sheriff of the City of Jacksonville, and its individual officer Defendants, as stated herein, indicates a deliberate indifference by the officers and the Sheriff to the serious medical needs of Mr. Williams.

42.     The aforesaid Defendants, with knowledge of Mr. Williams's medical needs and/or with deliberate indifference to such serious medical needs, acted or failed to act in such manner as to prevent Decedent from obtaining needed medical treatment and care and/or to prevent needed medical treatment and care from reaching the Decedent, Thesis Williams.

43.     The actions of the individual Defendants Prohaska, Kelsey, Halliday, Smith, Tranumn, Rivera, McDonald, Rhoden, Winckler, Gibbens, Trimble, Wade, and Magg, the Jacksonville Sheriff's Office, and Defendant Sheriff Rutherford, in being deliberately indifferent to the serious medical needs of Mr. Williams, are a direct and proximate cause of his death.

44.     The acts and omissions of all the Defendants in this case deprived Mr. Williams of his rights under the Eighth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

45.     In that the acts and omissions of the individual officer Defendants were consistent with the policy and practices of John Rutherford, Sheriff of Jacksonville, Defendant Sheriff John Rutherford is also liable.

46.     Defendant Rutherford violated the constitutional rights of Mr. Williams by maintaining a policy, practice and pattern of failing to provide detainees such as Mr. Williams with adequate medical care and treatment, failing to train corrections officers to provide detainees with adequate medical care and treatment, and the participation in the denial of adequate medical care by one or more final decision makers of the Sheriff's Department.

47.     The actions of Defendants were intentional and in reckless disregard and callous indifference to the rights of Mr. Williams.

48.     As a proximate result of the acts, omissions and Constitutional violations as alleged above, prior to his death Mr. Williams suffered great physical pain, mental anguish, fear, emotional distress, bodily injury, brain damage, loss of earning capacity, loss of enjoyment of life and eventual death.

## COUNT II
## (DENIAL OF MEDICAL TREATMENT IN VIOLATION OF 42 U.S.C. § 1983)

49.     Plaintiff hereby realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 48 of the Amended Complaint as if set forth in full herein.

50.     The Defendants were charged with the safe keeping, supervision and custody of Mr. Williams, had notice of the Mr. Williams's need for medical services by virtue of, *inter alia*, his observable physical condition, distress, and symptoms as well as being informed of such distress by Mr. Williams and other inmates.

51.      The Defendants denied medical treatment to Mr. Williams for non-mental health issues and such denial was in accordance with the custom and policy of the Defendant Jacksonville Sheriff's Office and Defendant Rutherford.

52.     The Defendant Sheriff knew of and approved of the procedures at the PTDF which permitted individuals with mental health issues suffering from non-mental health medical issues, to be placed in cells without adequate medical evaluation or treatment and without adequate monitoring.

53.     The individual Defendants Prohaska, Kelsey, Halliday, Smith, Tranumn, Rivera, McDonald, Rhoden, Winckler, Gibbens, Trimble, Wade, and Magg knowingly and intentionally,

with deliberate indifference to Mr. Williams' serious medical needs, failed to provide Mr. Williams with adequate medical evaluation, treatment, monitoring and attention.

54.     The treatment of Mr. Williams by the Defendants Prohaska, Kelsey, Halliday, Smith, Tranumn, Rivera, McDonald, Rhoden, Winckler, Gibbens, Trimble, Wade, and Magg acting as Corrections Officers at the PTDF also resulted in a denial of medical treatment and was in accordance with the custom and policy of the Jacksonville Sheriff's Department in operating the PTDF.

55.     The actions of Defendants were intentional and in reckless disregard and callous indifference to the rights of Mr. Williams.

56.     As a direct and proximate result of the acts and omissions in the denial of medical care and treatment as alleged above, Mr. Williams suffered severe physical pain, mental anguish, bodily injury, emotional distress, fear, brain damage, loss of earning capacity, loss of enjoyment of life, and eventual death.

57.     The above described acts and omissions of Defendants, jointly and severally, constituted deliberate indifference to Mr. Williams's obvious and clearly identified serious medical needs, which was a direct and proximate cause of his death, in violation of his rights as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court grant the following relief:

(1)     Enter judgment on behalf of Plaintiff against all Defendants on all Counts herein;

(2)     Award Plaintiff compensatory damages against Defendants, jointly and severely, in amounts to be determined by the jury;

(3)     Award Plaintiff reasonable attorneys' fees, court costs, expenses, pre-judgment interest, and post-judgment interest;

(4)     Award Plaintiff punitive damages against Defendants, jointly and severely, in their individual capacity; and

(5)     Such other or further equitable and monetary relief as the Court deems appropriate.

Respectfully Submitted,


_Neil L. Henrichsen_
Neil L. Henrichsen
Fla. Bar No. 0111503
HENRICHSEN SIEGEL, P.L.L.C.
1648 Osceola Street
Jacksonville, FL 32204
Phone: (904)381-8183
Fax: (904)381-8191
nhenrichsen@hslawyers.com

Trial Counsel for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims in this Amended Complaint.
Dated:  December 3, 2013

Respectfully Submitted,

_/s/ Neil L. Henrichsen_
Neil L. Henrichsen
Fla. Bar No. 0111503
HENRICHSEN SIEGEL, P.L.L.C.
1648 Osceola Street
Jacksonville, FL 32204
Phone: (904)381-8183
Fax: (904)381-8191
nhenrichsen@hslawyers.com

Trial Counsel for Plaintiff

-14-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of December a correct copy of the foregoing Amended Complaint was furnished via email to the following Counsel for Defendants:

Sean Granat, Esq.
Assistant General Counsel
City of Jacksonville
City Hall, St. James Building
117 West Duval Street, Suite 480
Jacksonville, FL 32202
(904)630-1859
(904)630-1316 fax
Sgranat@coj.net

Counsel for Sheriff Rutherford

Paul Daragjati, Esquire
Klausner and Kaufman, P.A.
10059 NW 1st Ct
Plantation, Florida 333247006
paul@robertdklausner.com
Counsel for Individual Defendants

<u>/s/ Neil L. Henrichsen</u>
Neil L. Henrichsen